HOWARD W. BOEHLER, Plaintiff and Respondent, *v.*
CHARLES SANDERS, Defendant and Appellant.

No. 10789
Submitted June 11, 1965. Decided August 12, 1965.
404 P.2d 885

McKeon & Brolin, Anaconda, Frank Burgess (argued), Butte, for appellant.

Louis Forsell (argued), Helena, Walsh & Scanlon, Anaconda, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment entered on a jury verdict in the amount of $5,000 awarded plaintiff and respondent, Howard W. Boehler. The action arose out of an automobile collision at the intersection of Third and Spruce Streets in Anaconda, Montana, between the hours of 5:00 p. m. and 6:00 p. m. on October 7, 1962.

The plaintiff and respondent, Howard W. Boehler, was driving a 1959 Renault, and the defendant and appellant, Charles Sanders, was driving a 1959 Chevrolet. The result of the collision between the French made Renault and the American made Chevrolet was reminiscent of the Carpentier-Dempsey fight in the 1920s. The American made product won. In fact, the plaintiff had to replace the 1959 model Renault with a later one.

The defendant's theory on trial was that he had carefully stopped at the intersection, had looked both directions down

Third Street and Spruce, but due to an obstruction in his view on Third Street he did not see anything and therefore proceeded into the intersection some eight feet when he saw a flash which turned out to be the plaintiff's car. The crash that followed resulted, according to defendant's version, from plaintiff's cutting in front of him causing the left rear of plaintiff's car to hit defendant's left front fender and bumper, which also caused damage to plaintiff's left rear fender. The plaintiff's car was turned around and faced in the opposite direction.

The plaintiff's version of what occurred at the street intersection differs radically from that given by the defendant. He testified that he was traveling west on Third Street at from fifteen to seventeen miles per hour when he entered the intersection of Third and Spruce where he was hit by the appellant. He testified that he looked both ways before entering the intersection, but that he was primarily interested in the right, realizing that if there were a vehicle coming from that direction it would have the right of way. Plaintiff did not see the defendant's car at any time prior to the accident. He testified that right after the accident and just after he got out of his car that the defendant said: " 'Well, I'll tell you Howard, in the last two or three—' I am not sure of the number whether it was two or three, but he said, 'In the last two or three accidents I have been in, I have been blamed for them, and I think it is time that it was someone else's turn.' " This statement was denied by defendant.

Immediately after the accident plaintiff complained to defendant of a back injury although he never was hospitalized.

Two officers of the Anaconda Police Department, Officers Riley and McEwan, arrived at the scene within minutes of the accident and made an investigation which became part of the evidence introduced at the trial. Officer Riley's report is as follows:

"Charles Sanders, 721 West Park Street, collided with Howard Boehler, 1116 West Third Street, at the intersection of

Third and Spruce. Sanders' car, License No. 51-393, which was going north on Spruce, collided with Boehler's car, License No. 1-16084, and Boehler's car was going west on Third. Sanders' car was damaged left front fender, and Boehler's car was damaged left rear fender. Boehler's car went approximately 42 feet after impact, and Boehler was complaining of neck and arm injuries." Officer Riley made an on the scene investigation including the necessary measurements of the distances involved, point of impact, and other regular police matters concerning this type of case.

Officer McEwan followed Officer Riley as a witness and during his testimony, after proper qualification, was allowed to state his opinion, based on the police investigation made at the accident site, as to which car entered the intersection first. His testimony is as follows:

"Q. Would you state which car, if you have an opinion, which car entered the intersection first, Officer McEwan? A. Well, in my opinion, I would say that this car was in the intersection first.

"Q. Which car are you referring to? A. The Boehler car.

"Q. It was first into the intersection? A. Yes.

"Q. From your investigation of the accident, what type of collision would you call this? A. Well, being that this car was struck on the left rear fender, and this car damaged on the left front here, I would say it would be a striking collision, and it was not a front end collision. It would be definitely a side collision of this Sanders' car."

Concerning the physical injuries, Dr. Lacey, respondent's physician, who administered to respondent's injuries, testified that respondent stated that his back pained him severely; that he hurt real bad, and that his neck hurt. He further testified that respondent had a "contusion with a subcutaneous hematoma over the left forehead, and a contusion with hematoma on the left upper arm." His diagnosis was a "sprain of the trapezious muscle on the right, and multiple contusions, and a sprain

of the right thumb." In Dr. Lacey's opinion the respondent's condition was chronic, and permanent and subject to aggravation.

The appellant had Dr. Trobough examine the respondent and he disagreed with the respondent's medical testimony as to the permanency and chronic conditions resulting from the accident.

The City of Anaconda had three Ordinances that were considered by the court and jury in the trial of this case.

1. Ordinance 355 concerns the driver of an automobile that fails to drive and operate an automobile on the right half of the highway while crossing an intersection;

2. Ordinance 368, now 90-A, as amended, concerns the driver of an automobile that fails to yield the right of way to the vehicle on the right upon entering an intersection; and

3. Ordinance 350 concerns operating an automobile at an excessive rate of speed.

The appellant sets forth three specifications of error, which are as follows:

1. Expert opinion given over timely objection as to matters within the common knowledge and understanding of the jury is an invasion of the province of the jury and as such is prejudicial error;

2. Permitting a police officer, who had not witnessed an intersection collision of two vehicles, to give an opinion as to which of the two vehicles involved entered the intersection first, is prejudicial error, unless such opinion is adequately supported by competent testimony theretofore given; and

3. The verdict of the jury is not supported by the evidence introduced at the trial.

Specifications 1 and 2 concern the testimony of the police officer and will be considered together.

According to appellant's argument and the cases cited alleging support of his theory, a police officer, who qualifies as

an expert in traffic matters, cannot give opinion testimony based on his investigation if he did not witness the accident. Such is not the law for he can give an opinion based on the facts he testified to. Here both officers testified from the diagram of the scene of the accident. They described the physical evidence at the scene, and in the case of Officer McEwan he located the point of impact at the intersection, he told of the location of the debris off the cars and recounted where both vehicles were damaged. Appellant's objection to this testimony was "that it called for a conclusion and that no proper foundation was laid." This objection was properly overruled by the trial judge, and now the appellant raises another objection "invasion of the province of the jury." This objection comes too late. R.C.M.1947, § 93-5101.

Appellant cites two late cases in support of his contention, one a 1964 Arizona case, Dobbertin v. Johnson, 95 Ariz. 356, 390 P.2d 849, and a Montana case, O'Brien v. Great Northern Ry. Co., 145 Mont. 13, 400 P.2d 634. Neither case is in point. In the Arizona case, the officer's testimony was ruled out due to his statement or opinion as to who was negligent. In the O'Brien case, supra, the highway patrolman's testimony was found prejudicial only because he stated there was no way he could determine the speed of a vehicle from the skid marks; that he was not familiar with stopping distances in terms of speed, therefore, this court held that it was improper to ask his opinion of whether or not there was any evidence of the motorist's violating the speed limit. Such are not the facts in this case and neither of the cited cases are applicable.

Too, it should be noted that the court's instruction No. 5, proposed by the appellant, covers this testimony.

"The rules of evidence ordinarily do not permit the opinion of a witness to be received as evidence. An exception to this rule exists in the case of expert witnesses. A person who by education, study and experience has become an expert in any art, science or profession, and who is called as a witness, may

give his opinion as to any such matter in which he is versed and which is material to the case. You should consider such expert opinion and should weigh the reason, if any, given for it. You are not bound, however, by such an opinion. Give it the weight to which you deem it entitled, whether that be great or slight, and you may reject it, if, in your judgment, the reasons given for it are unsound."

This court has previously held in a number of cases that an expert or a skilled witness can give an opinion upon facts previously testified to by him, but not on facts known to him, but not communicated to the court or jury. The witness must testify as to the facts upon which he bases his opinion. Nesbitt v. City of Butte, 118 Mont. 84, 92, 163 P.2d 251; Irion v. Hyde, 110 Mont. 570, 105 P.2d 666; 32 C.J.S. Evidence § 446, p. 64; 20 Am.Jur § 793, p. 665. For the foregoing reasons we find no merit to appellant's first two specifications of error.

Concerning specification of error 3 that the verdict is not supported by the evidence, we find no merit. While not argued other than generally to point out appellant's disagreement with the jury's findings, we find the record made at trial is such that it will not be disturbed on appeal, there being substantial evidence to support such findings. Frank J. Trunk & Sons v. DeHaan, 143 Mont. 442, 391 P.2d 353; Hammond v. Knievel, 141 Mont. 433, 378 P.2d 388.

In view of this disposition of the appeal, no comment is required on the motion to dismiss filed by the respondent.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES DOYLE and CASTLES concur.

MR. JUSTICE ADAIR dissenting.

The appellant in the instant case cited and relied upon this court's ruling in the recent case of O'Brien v. Great Northern Ry. Co., 145 Mont. 13, 400 P.2d 634, decided January 25, 1965, wherein this court held that it was reversible error in the dis-

trict court to permit the plaintiffs' witness, John Garland, a thoroughly trained and experienced Montana Highway Patrolman, serving in that capacity continuously in the Chinook, Montana, area for some sixteen years, and who arrived at the scene of the accident within five minutes after the happening of the collision, and who immediately upon his arrival at the scene, thoroughly and methodically investigated each and every available detail of the accident, and who is by reason of his long service, training and experience an expert witness, to testify that after his thorough survey of the scene of the accident wherein O'Brien, the driver of the automobile who there lost his life, that "in my own mind I don't think the man was exceeding the speed limit."

In my opinion the trial judge was within his authority and right in permitting the expert witness, Highway Patrolman Garland, to answer the interrogatories so put to him, and that in so ruling the trial judge in the O'Brien case did not commit reversible error in permitting such expert to so testify.

To the majority opinion in the O'Brien case, supra, this writer dissented to the Supreme Court's ruling in the O'Brien case, supra, wherein a majority of the members of this court held that "it was unduly prejudicial to the appellant's case and therefore reversible error to admit it."

The appellant in the instant case of Boehler v. Sanders had the right to cite and rely upon this court's ruling in the case of O'Brien v. Great Northern Ry. Co., supra, until such time as this court should change the rule which is therein announced.

In my opinion the expert witness, Montana Highway Patrolman John Garland was entitled to testify as he did, but nonetheless this court held that in so doing he committed prejudicial error.

It follows that until the ruling in the O'Brien case, supra, has been changed or discarded that our courts and attorneys have a right to cite and rely upon such ruling, as did counsel for the appellant in the instant case of Boehler v. Sanders.

In view of the foregoing I respectfully dissent to this court's ruling that District Judge Elwell in the O'Brien case committed reversible error in permitting Montana Highway Patrolman John Garland to testify as an expert and that District Judge Stewart, presiding in the instant case of Boehler v. Sanders committed no reversible error in permitting the two Anaconda Police Officers, neither of whom was an eyewitness to the accident, to qualify as experts in traffic matters and to give an opinion based on the facts to which they testified.

In my opinion the rule announced by this court in the O'Brien case should be controlling in the instant case and in like cases until this court sees fit to reverse and abandon the rule resorted to and announced in the O'Brien case.

The judges and attorneys of this state are entitled to know which of the two rules is the correct rule.